IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Industrial Packaging Supplies, Inc., | ) | |
| | ) | C.A. No. 6:12-713-HMH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| John Martin and Unisource Worldwide, | ) | |
| Inc., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Plaintiff Industrial Packaging Supplies, Inc.'s ("IPS")

motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. IPS seeks a

preliminary injunction barring Defendants from using or disclosing its confidential information

and trade secrets and soliciting or conducting business with any customers with whom

Defendant John Martin ("Martin") had direct contact during the last twelve months of his

employment with IPS. The court held a hearing on IPS' motion on March 20, 2012, and for the

reasons that follow, the court grants the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

IPS is a distributor of packaging supplies founded in Greenville, South Carolina. (Pl.

Mem. Supp. Mot. Prelim. Inj. Ex. A (Murdock Aff. ¶¶ 3, 4).) Martin was employed by IPS from

January 2002 until March 5, 2012, when he voluntarily left IPS to commence employment with

Defendant Unisource Worldwide, Inc. ("Unisource"), a direct competitor of IPS. (Id. at 5.)

Beginning in February 2009, Martin worked for IPS as an outside sales associate in Atlanta,

Georgia. (Id. Ex. A (Murdock Aff. ¶ 10).) While working for IPS in Georgia, Martin solicited

1

and serviced customers in Georgia, and he continued to maintain a customer base for IPS outside of Georgia.  (Id. Ex. A (Murdock Aff. ¶ 11).)

Martin terminated his employment with IPS on March 5, 2012, and the following day, he commenced employment with Unisource.  (Def. Mem. Opp'n Prelim. Inj. Ex. A (Martin Decl. ¶ 24).)  IPS alleges that in his final week of employment, Martin scheduled appointments with numerous IPS customers "in a coordinated attempt to convert the customer base IPS had assigned to Martin to Unisource."  (Pl. Mem. Supp. Mot. Prelim. Inj. 5.)   IPS further alleges that during Martin's tenure at IPS, he "gained access to IPS' proprietary, confidential and trade secret business information, including, without limitation, information related to IPS' products, technology, costs, processes, designs, prices, material suppliers, distributors and customers." (Id. Ex. A (Murdock Aff. ¶ 12).)  Derrick Murdock ("Murdock"), IPS' Vice President of Sales, avers that Martin removed and disclosed proprietary information immediately prior to his departure from IPS in an attempt to benefit Unisource and unfairly compete with IPS.  (Id. Ex. A (Murdock Aff. ¶ 25).)

IPS commenced this action in state court on March 12, 2012, alleging that Martin breached the terms of his written employment agreement with IPS by, "among other things, competing with IPS and using, disclosing and misappropriating IPS' Trade Secret and Confidential Information and soliciting IPS' customers."  (Compl. ¶ 95.)  It further requested a temporary restraining order or preliminary injunction enjoining Defendants from:

> (A) Using, disclosing, or transmitting IPS' Trade Secrets and Confidential Information as specifically identified herein, including but not limited to information related to IPS' products, designs, technology, pending projects, business plans and strategies, and pricing, as well as information related to IPS' customers, suppliers and distributors with regard to contact information, special

needs, purchasing histories and the identity of individuals with decision-making authority and providing that all original documents, records, materials or devices containing or reflecting such information, and all copies thereof, be **immediately** returned to IPS;

(B) Selling any product based in whole or in part on any confidential, proprietary and/or trade secret information belonging to IPS; **and providing that**

(C) Defendants shall identify to counsel for Plaintiff, no later than two (2) business days from the date of the Court's order, each and every customer of IPS whom Defendants have solicited for their own benefit, directly or indirectly, and the full source, nature and substance or any IPS Confidential Information or Trade Secrets, as identified herein, that Defendants may have used at any time subsequent and/or related to Martin's employment with IPS or have disclosed to any third party during that time frame and, where applicable, the names, dates and contact information for the individual or entity to whom said disclosure was made, including without limitation parties internal to Defendant Unisource or any affiliate or entity of Unisource; **and requiring that**

(D) Defendants shall refrain from the destruction, alteration, transmittal or movement of <u>any</u> documents, in whatever form, that may contain or reflect IPS' Confidential Information or Trade Secrets so that said documents may be gathered and reviewed by counsel for IPS and this Court; and

(E) Any and all other such acts as the Court deems appropriate for injunctive relief.

(Id. ¶ 43.)  IPS further requested that Martin be enjoined "from, directly or indirectly, selling any product that competes with any product sold by IPS to any person, firm, corporation, or other entity to whom Martin sold products for or on behalf of IPS, or supervised the sale(s) of products for or on behalf of IPS, during the last twelve (12) months of his employment with IPS."  (Id. ¶ 44.)

On March 12, 2012, the same day IPS filed its complaint in state court, Defendants removed this action to federal court.  That afternoon, the court held a hearing on IPS' motion for an immediate temporary restraining order.  Counsel for IPS and Defendants appeared at the

hearing. At the conclusion of the hearing, the court granted IPS limited injunctive relief, directing that Martin "not divulge any trade secrets or proprietary information prior to a subsequent hearing and that he not call on any [of IPS'] former customers." (Mar. 12, 2012 Hr'g Tr. 32.) Because of the limited evidence before the court, the court scheduled a subsequent hearing for March 20, 2012, to determine whether a preliminary injunction would issue. Defendants filed a memorandum in opposition to IPS' motion for a preliminary injunction on March 19, 2012. Having the benefit of oral argument and the parties' written memoranda briefing the issues before the court, the court grants IPS' motion for a preliminary injunction.

## II. DISCUSSION OF THE LAW

To obtain a preliminary injunction, the moving party must establish four elements: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. Winter v. Natural Def. Council, Inc., 555 U.S. 7, 20 (2008). A preliminary injunction is intended "merely to preserve the relative positions of the parties until a trial on the merits can be had." Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." Id. Consequently, Plaintiff "is not required to prove [its] case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." Id. (internal citations omitted).

4

## A. Likelihood of Success on the Merits

IPS argues that it is likely to succeed on the merits because Martin entered into a fully enforceable employment agreement which contained a non-compete clause and required that Martin maintain the confidentiality of IPS' confidential and trade secret information.  (Pl. Mem. Supp. Mot. Prelim. Inj. 10.)  The non-compete clause provides, in pertinent part, as follows:

> Employee agrees that during the term of his or her employment with IPS and for a period of twelve months immediately following termination of his or her employment relationship with IPS, for any reason, he or she will not for himself or herself, or on behalf of any other person, firm or corporation, sell, offer for sale, or assist in the sale, directly or indirectly, of any product which competes with any product sold by IPS to any person, firm, corporation, or other entity to whom Employee sold products for or on behalf of IPS or supervised the sale of products for or on behalf of IPS, during the last twelve months of his or her employment with IPS.

(Id. Ex. A (Employment Agreement ¶ 4).)  Regarding confidential information, the employment agreement provided:

> Employee . . . agrees that following the termination of his or her employment with IPS, he or she will not, without written consent of IPS, use or disclose any Confidential Information of IPS that is not a matter of common knowledge in IPS's business, trade, industry, or otherwise.  Further, it is understood and agreed that [Martin] shall return all Confidential Information and other Company property to IPS at the time of termination of the employment relationship.

(Id. Ex. A (Employment Agreement ¶ 3).)  Notwithstanding the terms of the employment agreement, IPS contends that immediately prior to Martin's departure, he shared proprietary information with Unisource and scheduled appointments with numerous IPS customers in an attempt to convert IPS' customer base.  In support of this contention, IPS submitted correspondence from two of its customers who noted that Martin had attempted to contact them immediately prior to Martin's departure from IPS.  (Pl. Mot. Clarification TRO Order Ex. E

5

(Customer Emails, generally).)

Defendants contend that IPS is unable to demonstrate a likelihood of success on the merits because (1) the non-compete agreement is unenforceable; (2) IPS materially breached the employment agreement prior to any alleged breach by Martin; and (3) IPS has failed to establish that the information it seeks to protect constitutes a trade secret. The court addresses each argument in turn.

### 1. Enforceability of Non-Compete Agreement

Defendants first argue that IPS is unable to carry its burden in demonstrating a likelihood of success on the merits because the non-compete agreement is facially unenforceable. (Def. Mem. Opp'n Mot. Prelim. Inj. 9-11.) A non-compete agreement is valid under South Carolina law if it is (1) "necessary for the protection of the legitimate interest of the employer"; (2) "reasonably limited in its operation with respect to time and place"; (3) "not unduly harsh and oppressive in curtailing the legitimate efforts of the employee to earn a livelihood"; (4) "reasonable from the standpoint of public policy"; and (5) "supported by valuable consideration." Rental Unif. Serv. v. Dudley, 301 S.E.2d 142, 143 (S.C. 1983). For purposes of IPS' motion for a preliminary injunction, Defendants do not contest the validity of the non-compete agreement under the last three elements. Instead, they argue that the non-compete agreement is too broad to be characterized as necessary for the protection of IPS' legitimate interests and that it further fails because it lacks a geographic limitation.

With respect to the first element, Defendants rely upon Fournil v. Turbeville Insurance Agency, Inc., C/A No. 3:07-3836-JFA, 2009 WL 512261 (D.S.C. Mar. 2, 2009) (unpublished), in which the court concluded that a covenant not to compete was invalid under South Carolina law.

6

There, the covenant not to compete required that the employee not "directly or indirectly . . . solicit, attempt to obtain or accept any insurance business of any nature from any customer or account on the books of [Employer] or hire any employee of [Employer] at the time of her employment." Id. at *4.  The court observed that an employer has a legitimate business interest in protecting against only *unfair* methods of competition, such as taking confidential customer information that the employee acquired during the course of his employment and using it to compete with his former employer.  Id. at *5.  The court concluded that the covenant not to compete was overbroad because the employer had no legitimate interest in preventing a employee from competing with its former customers as well as those customers with whom the employee had no special relationship while employed.  Id.

Relying on Fournil, Defendants contend that the non-compete agreement is unenforceable because it restricts Martin from soliciting business from IPS' former customers.  However, the covenant not to compete here is easily distinguishable from the covenant before the court in Fournil because it is narrowly tailored to only those customers with whom Martin had direct contact.  Furthermore, unlike the non-compete agreement in Fournil, the one here restricts Martin from soliciting or doing business with only those customers with whom he had direct contact during the last twelve months of his employment with IPS.  Defendants further argue that the non-compete agreement is invalid because it lacks a geographic limitation.  However, South Carolina case law recognizes that "[p]rohibitions against contacting existing customers can be a valid substitute for a geographic limitation."  Wolf v. Colonial Life & Accident Ins. Co., 420 S.E.2d 217, 222 (S.C. Ct. App. 1992).  Here, Martin is restricted from soliciting or accepting business from only those customers with whom he had direct contact during the last twelve

months of employment.  Similar covenants have withstood challenges on overbreadth grounds

notwithstanding the absence of a geographic limitation.  <u>See, e.g.</u>, <u>ScanSource, Inc. v. Thurston

Group, LLC</u>, Civil Action No. DKC 11-0380, 2011 WL 3608227, at **4-5 (D. Md. Aug. 15,

2011) (unpublished) (applying South Carolina law and concluding that covenant not to compete

lacking a geographic limitation was enforceable because it was limited to employee's customers).

Based on the foregoing, the court concludes that at this juncture of the proceedings, the non-

compete agreement is not facially unenforceable.

### 2.  IPS' Breach of Employment Agreement

Defendants next argue that even if the non-compete agreement is enforceable, Plaintiff is

unable to demonstrate a likelihood of success on the merits because IPS was the first party to

materially breach the employment agreement.  (Def. Mem. Opp'n Mot. Prelim. Inj. 12-13.)

Martin's employment agreement provided that he would  be compensated "on a salary plus bonus

basis."  (Pl. Mem. Supp. Mot. Prelim. Inj. Ex. A (Employment Agreement ¶ 8).)  It further

provided that the terms could be modified only by a writing signed by IPS and Martin.  (<u>Id.</u> Ex. A

(Employment Agreement ¶ 11).)  In his declaration, Martin avers that approximately six months

ago, IPS altered his "compensation to salary plus commission, with a declining scale such that

my salary went down each month over the 6 month period and ultimately became commission

only on March 1, 2012."  (Def. Mem. Opp'n Mot. Prelim. Inj. Ex. A (Martin Decl. ¶ 12).)

Defendants contend that in changing Martin's salary, IPS breached the employment agreement

because the terms were never reduced to a writing signed by Martin.

During the hearing, however, IPS' counsel presented the court with a written memorandum, signed by Martin, explaining the transition to full commission compensation. Counsel further represented that, like Martin, all outside sales associates were transitioned to a full commission salary.  Defendants do not contest the authenticity of the memorandum. (Mar. 20, 2012 Hr'g Tr. 5.)  At this stage of the proceedings, therefore, there is no probative evidence demonstrating that IPS materially breached the terms of the employment agreement.

### 3.  Trade Secrets

Defendants finally argue that the court should not issue a preliminary injunction because IPS has failed to show that any of the information it seeks to protect constitutes a trade secret. (Def. Mem. Opp'n Prelim. Inj. 14-17.)  IPS seeks a preliminary injunction to protect its "proprietary, confidential and trade secret business information . . . related to IPS'[] products, technology, costs, processes, designs, prices, material suppliers, distributors and customers."  (Pl. Mot. Prelim. Inj. 2-3.)  This court previously has explained that a "[c]onfidential relationship is the keystone of a trade secret action."  Future Plastics, Inc. v. Ware Shoals Plastics, Inc., 340 F. Supp. 1376, 1384 (D.S.C. 1972).  Consequently, for information to be classified as a trade secret, there must first be "an express understanding as to the confidential nature of the information or the circumstances must be such that the employee is aware of the confidence placed in him by the employer."  Id.  Here, IPS alleges, and the record evidence supports, that Martin entered into an enforceable employment agreement in which he explicitly agreed to safeguard IPS' confidential information.  (Compl. ¶ 16.)  "Confidential information," moreover, is defined by the employment agreement as "information that is not readily and easily available to the public or a matter of common knowledge to those in IPS'[] business, trade, or industry, including, but not

9

limited to, pricing methods and pricing information, costs, profits, profit margins, suppliers, business data, goals or activities, business strategy, sales techniques, identities and addresses of IPS'[] employees and their functions, identities and addresses of IPS'[] customers, and customer information." (Pl. Mem. Supp. Mot. Prelim. Inj. Ex. A (Employment Agreement ¶ 3).) This definition is consistent with the statutory definition of a trade secret as defined in S.C. Code Ann. § 39-8-20(5), which, among other criteria, requires that the information not be generally known to or readily ascertainable to the general public. Based on the foregoing, the court concludes that IPS has made a clear showing that the information it seeks to protect falls within the scope of a trade secret as defined by South Carolina law.

### B. Irreparable Harm

IPS has made a clear showing that it will suffer irreparable harm if Defendants are not enjoined from disclosing and using IPS' confidential information and trade secrets. IPS alleges that immediately prior to his departure, Martin attended a "company-wide monthly strategic sales meeting, at which IPS leadership discussed confidential business information regarding the Company's customers, pricing, and near-term strategic business plans, and also chose to attend a branch-monthly strategic sales meeting at which those same business sensitive topics were discussed specific to his territory and the surrounding market." (Pl. Mot. Prelim. Inj. 5.) It further contends that Martin had access to and likely removed proprietary information before leaving, including information about Plaintiff's customers, their purchasing histories, costs and related data. (Id.) Without an injunction, IPS fears that Martin will use this information to unfairly compete with IPS and convert its customer base. (Id. at 6.) Courts consistently have recognized that the loss of permanent relationships with customers and the misappropriation of

10

proprietary information constitutes irreparable harm to an employer.  See, e.g., Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th Cir. 1994); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1055 (4th Cir. 1985); Standard Register Co. v. Kerrigan, 119 S.E.2d 533, 538-39 (S.C. 1961); Peek v. Spartanburg Reg'l Healthcare Sys., 626 S.E.2d 34, 37 & n.2 (S.C. Ct. App. 2005).

        In their memorandum in opposition to IPS' motion for a preliminary injunction, Defendants contend that IPS is unable to establish that it will suffer irreparable harm absent a preliminary injunction because IPS is not legally registered to conduct business in Georgia, and therefore, it is not entitled to any of the business Martin conducts in Georgia.  (Def. Mem. Opp'n Mot. Prelim. Inj. 17-18.)  IPS maintains that it does not pay sales tax in Georgia, and consequently, it is not required to be registered to conduct business there.  (Mar. 20, 2012 Hr'g Tr. 8-9.)  When questioned by the court, Defendants' counsel conceded that he did not know at this stage of the proceedings whether IPS was legally authorized to engage in business in Georgia given that it was not registered to conduct business in Georgia.  (Id. at 24.)  Because IPS has demonstrated that it stands to lose permanent relationships with its customers and that it faces the misappropriation of proprietary and confidential information if a preliminary injunction is not issued, the court concludes IPS has made a clear showing of irreparable harm.

### C.  Balance of Equities

        The balance of equities tips in IPS' favor because the harm that would result if Defendants were allowed to violate the terms of the non-compete agreement and use its confidential information outweighs the harm to Defendants from enforcement of the agreement. Without an injunction, IPS could potentially lose customers as well as information regarding

11

valuable trade secrets, goodwill, business reputation, and methods of business operation.  Martin voluntarily entered into an agreement with IPS at the inception of his employment agreeing that he would not divulge IPS' confidential information and that for twelve months following his employment with IPS, he would not solicit IPS customers with whom he had direct contact during his last twelve months of employment.  Based on the foregoing, the court concludes that the harm IPS faces if a preliminary injunction is not issued outweighs the harm to Defendants by maintaining the status quo until a trial on the merits.

### D.  Public Interest

The public has a strong interest in ensuring that contracts are enforced.  As one court has explained, the public maintains an interest in ensuring that valid non-compete agreements are enforced because "[r]estrictive covenants can play an important role in a growth of a business that depends upon the development of good will through effective customer service." Intelus Corp. v. Barton, 7 F. Supp. 2d 635, 642 (D. Md. 1998).  Furthermore, "it is also in the public's interest to preserve the status quo and protect the sanctity of contracts." Moller-Maersk A/S v. Escrub Sys., Inc., No. 1:07cv1276 (JCC), 2007 WL 4562827, at *4 (E.D. Va. Dec. 21, 2007) (unpublished).  Because at this juncture of the proceedings the court concludes that the covenant not to compete is valid, it further concludes that a preliminary injunction is in the public's interest.

It is therefore

**ORDERED** that IPS' motion for a preliminary injunction, docket number 5, is granted.

It is further

**ORDERED** that Defendants John Martin and Unisource Worldwide, Inc. are enjoined,

directly or indirectly, alone or in concert with others, from using, disclosing, or transmitting IPS'

trade secrets and confidential information as defined by S.C. Code Ann. § 39-8-20(5), including

but not limited to information related to IPS' products, designs, technology, pending projects,

business plans and strategies, and pricing, as well as information related to IPS' customers,

suppliers and distributors with regard to contact information, special needs, purchasing histories

and the identity of individuals with decision-making authority and providing that all original

documents, records, materials or devices containing or reflecting such information, and all copies

thereof, be immediately returned to IPS.  It is further

**ORDERED** that Defendants John Martin and Unisource Worldwide, Inc. are enjoined,

directly or indirectly, alone or in concert with others, from selling any product based in whole or

in part on any confidential, proprietary and/or trade secret information belonging to IPS.  It is

further

**ORDERED** that Defendants John Martin and Unisource Worldwide, Inc. shall identify to

counsel for IPS, no later than two (2) business days from the date of this court's order, each and

every customer of IPS whom Defendants have solicited for their own benefit, directly or

indirectly, and the full source, nature and substance or any IPS confidential information or trade

secrets, as identified herein, that Defendants may have used at any time subsequent and/or related

to Martin's employment with IPS or have disclosed to any third party during that time frame and,

13

where applicable, the names, dates and contact information for the individual or entity to whom

said disclosure was made, including without limitation parties internal to Defendant Unisource or

any affiliate or entity of Unisource.  It is further

     **ORDERED** that Defendants John Martin and Unisource Worldwide, Inc. shall refrain

from the destruction, alteration, transmittal or movement of <u>any</u> documents, in whatever form,

that may contain or reflect IPS' confidential information or trade secrets so that said documents

may be gathered and reviewed by counsel for IPS.  It is further

     **ORDERED** that Defendant John Martin is enjoined from, directly or indirectly, selling

any product that competes with any product sold by IPS to any person, firm, corporation, or other

entity to whom Martin sold products for or on behalf of IPS, or supervised the sale(s) of products

for or on behalf of IPS, during the last twelve (12) months of his employment with IPS.  It is

further

     **ORDERED** that this injunction shall remain in effect during the pendency of this action,

and until a further order of this court.  It is further

     **ORDERED** that IPS' emergency motion for clarification, docket number 17, is denied as

moot.

     **IT IS SO ORDERED.**


                     s/Henry M. Herlong, Jr.
                     Senior United States District Judge

Greenville, South Carolina
March 29, 2012